UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**TISHAUNA WALKER**       **CIVIL ACTION NO. 23-303**

**VERSUS**      **JUDGE EDWARDS**

**GOVERNMENT PERSONNEL**      **MAG. JUDGE MCCLUSKY**
**MUTUAL LIFE INSURANCE CO**

**MEMORANDUM ORDER**

Before the Court is a Motion for Summary Judgment[1] filed by the defendant, Government Personnel Mutual Life Insurance Company ("GPM"). The plaintiff, Tishauna Walker, opposes[2] the Motion, and GPM filed a Reply.[3] Ms. Walker then filed a Motion to Strike GPM's Reply,[4] which we also consider here. GPM opposes the Motion to Strike,[5] and Ms. Walker filed a Reply.[6]

After careful consideration of the parties' memoranda and the applicable law, GPM's Motion for Summary Judgment[7] is **DENIED**. Ms. Walker's Motion to Strike[8] is also **DENIED.**

**I.  BACKGROUND**

This case arises out of GPM's denial of Ms. Walker's claim for the proceeds of her late husband's life insurance policy.[9]

---

[1] R. Doc. 11.
[2] R. Doc. 19.
[3] R. Doc. 23.
[4] R. Doc. 25.
[5] R. Doc. 29.
[6] R. Doc. 30.
[7] R. Doc. 11.
[8] R. Doc. 25.
[9] R. Doc. 1-2 at pp. 6-8.

1

On June 26, 2020, Ms. Walker's husband, Edward Tyree Wilson, applied for a life insurance policy with GPM.[10] The application was completed over the phone with an agent of GPM, Elisa Jirone.[11] Less than a year later, Mr. Wilson died of pneumonia and COVID-19.[12] Shortly thereafter, Ms. Walker filed her claim with GPM for the proceeds of Mr. Wilson's policy.[13] As Mr. Wilson died within the two-year contestability period of the policy, GPM initiated a "contestable claims review."[14] GPM subsequently denied Ms. Williams claim.[15] GPM provided reasons for its denial, namely, Mr. Wilson's alleged misrepresentations in his application regarding his health status and history.[16]

On January 30, 2023, Ms. Walker filed the instant suit in state court, seeking the proceeds that she alleges are owed to her under the insurance policy.[17] Ms. Walker contends that the denial of her claim was baseless.[18] Subsequently, the matter was removed to this Court on the basis of diversity jurisdiction under 28 USC § 1332.[19]

On May 15, 2023, GPM filed the instant Motion, seeking summary judgment "on the grounds that the insured made significant, material misrepresentations in his life insurance application with the intent to deceive GPM Life."[20] The alleged misrepresentations that GPM contends render the policy rescindable are: Mr.

---

[10] R. Doc. 11-5.
[11] R. Doc. 23-1 at pp. 2-3.
[12] R. Doc. 11-11 at p. 2.
[13] R. Doc. 11-7 at pp. 2-3.
[14] R. Doc. 11-1 at p. 7.
[15] R. Doc. 11-8.
[16] *Id.* at pp. 4-7.
[17] R. Doc. 1-2 at pp. 6-8.
[18] *Id.* at p. 7.
[19] R. Doc. 1.
[20] R. Doc. 11-1 at p. 6.

Wilson's weight being listed on the application as 285 pounds, when he was in fact 337 or 338 pounds;[21] his omission of "renal insufficiency";[22] and his omission of his history of stroke.[23] GPM argues that it would not have issued the policy "if Mr. Wilson's actual health conditions had been truthfully disclosed on the application…"[24] Accordingly, GPM argues that Mr. Wilson's answers on his application constitute "material misrepresentations . . . made with the intent to deceive," so as to void the policy under Louisiana law.[25]

Ms. Walker responded,[26] relying mostly on her own affidavit, and the deposition of Mr. Wilson's treating physician, Dr. Brouillette.[27] Ms. Walker contends that she participated in providing information to the GPM agent, Ms. Jirone, and that Mr. Wilson never saw the application.[28] Instead, Ms. Walker alleges that Mr. Wilson provided oral answers to Ms. Jirone, who then completed the application herself.[29] According to Ms. Walker's affidavit, Mr. Wilson told Ms. Jirone that he weighed "approximately 335" pounds.[30] Further, Ms. Walker alleges that "Dr. Brouillette advised [her and her husband] that her husband never had a 'stroke' and had no signs or symptoms of a stroke."[31] Ms. Walker contends that the application documentation provided by GPM during litigation "do[es] not match the

---

[21] *Id.* at pp. 8-9.
[22] *Id.* at pp. 11-13.
[23] *Id.* at pp. 10-11.
[24] *Id.* at p. 13.
[25] *Id.* at p. 19.
[26] Ms. Walker's response was filed on September 5, 2023, but was deficient for want of a table of contents and table of authorities. Her corrected response was filed on September 19, 2023, beyond the September 15, 2023, deadline. Nonetheless, the Court will consider it as if it were timely.
[27] R. Doc. 19.
[28] R. Doc. 19-3 at pp. 1-2, 4.
[29] *Id.* at p. 4.
[30] *Id.* at p. 3.
[31] *Id.* at p. 4.

3

information that her husband orally supplied Ms. Jirone."[32] Accordingly, Ms. Walker argues that any misrepresentations on the application were the fault of GPM or its agent, and not of Ms. Walker or her husband.[33] Further, Dr. Brouillette's deposition testimony provides that Mr. Wilson was noncompliant, yet truthful, when it came to his health issues;[34] that Dr. Brouillette did not witness any signs or symptoms, or proof, that Mr. Wilson had experienced a stroke;[35] and that Mr. Wilson's pathologies were tied together—diabetes, diabetic retinopathy, hypertension, and renal insufficiency (i.e., kidney disease).[36]

GPM replied, first asking us not to consider Ms. Walker's opposition, as its deficiency was not cured until five days after the response deadline.[37] GPM then moves to the merits, alleging that Ms. Walker's response was not sufficient to defeat summary judgment.[38] GPM alleges that Ms. Walker's affidavit is "conclusory, not backed in evidence, and contains inadmissible hearsay."[39] In contesting Ms. Walker's assertions, GPM attached to its Reply, the affidavit of Elisa Jirone, GPM's previously-mentioned agent.[40] Ms. Jirone declares that she "only spoke with Mr. Wilson to answer application questions."[41] GPM alleges that this disproves Ms. Walker's declaration that she participated in the phone call.[42] Further, Ms. Jirone

---

[32] *Id.*
[33] R. Doc. 19 at p. 10.
[34] R. Doc. 19-2 at p. 3.
[35] *Id.* at p. 4.
[36] *Id.* at p. 3.
[37] R. Doc. 23 at pp. 1-2.
[38] *Id.* at pp. 2-3.
[39] *Id.* at p. 3.
[40] R. Doc. 23-1. Ms. Jirone's affidavit is a new addition to the record, attached for the first time in GPM's Reply to Ms. Walker's Opposition.
[41] *Id.* at p. 3.
[42] R. Doc. 23 at p. 5.

declares that she did not sign the application document on behalf of Mr. Walker; that she did not alter or manipulate the application document beyond the answers that Mr. Walker provided her; and that she sent him the application electronically for his review and signature.[43] Thus, GPM contends that Ms. Walker's assertions to the contrary are "false."[44] Further, GPM argues that Dr. Brouillette's testimony regarding Mr. Wilson's truthfulness is irrelevant; that he is not qualified to analyze the handwriting on the application document; and that his testimony about the interplay of diabetes, hypertension, and renal insufficiency does not bear upon Ms. Jirone's completion of the application, or establish what she should have known in completing it, as Ms. Jirone is not a medical expert.[45] Finally, GPM insists that Mr. Wilson had a stroke. GPM asserts that "just because Brouillette did not personally see signs of a stroke does not mean that it did not occur"[46] and points to Mr. Wilson's prior medical records[47] as proof that he in fact suffered a stroke.

Ms. Walker then filed a sur-reply and a Motion to Strike.[48] Ms. Walker's pleading does not reargue the propriety of GPM's Motion for Summary Judgment, averring only that new evidence, and new arguments flowing therefrom, should be struck.[49] As previously discussed, the challenged new evidence is the affidavit of Ms. Jirone,[50] and the medical records from Mr. Wilson's June 27, 2017, visit to a

---

[43] R. Doc. 23-1 at p. 3.
[44] R. Doc. 23 at pp. 4-8.
[45] *Id.* at pp. 8-9.
[46] R. Doc. 23 at pp. 10-11.
[47] R. Doc. 28. Like Ms. Jirone's affidavit, these medical records were attached for the first time in GPM's Reply brief. GPM contends that these records were newly obtained and directly respond to Ms. Walker's assertion that Mr. Wilson did not have a stroke.
[48] R. Doc. 25.
[49] *Id.*
[50] R. Doc. 23-1.

hospital in Dallas.[51] Ms. Walker cites a number of cases to stand for the proposition that arguments made for the first time in reply may not be considered, and that evidence attached for the first time in reply should not be considered either.[52] Ms. Walker concludes her argument with the proposition that new affidavits may be permissible if they "merely respond[] to matters placed in issue by the opposition brief."[53]

GPM responded to the Motion to Strike, accusing it of being "entirely without merit."[54] GPM asserts that the exhibits attached to its Reply were "not 'new evidence,' but, instead, permissible rebuttal evidence."[55] GPM cites authority in arguing that evidence offered for the first time in a reply brief is admissible if it responds directly to a contention raised in the non-movant's opposition to summary judgment.[56] GPM alleges that the affidavit of Ms. Jirone was attached to rebut "Plaintiff's false and/or misleading statements regarding Jirone's actions or statements" as it relates to the application process.[57] GPM contends that since these allegations against Jirone were raised in Ms. Walker's opposition brief, it is permissible for GPM to respond accordingly with evidence from Ms. Jirone herself.[58] GPM further argues that the medical records from Dallas "were attached to directly rebut Plaintiff's false allegation" that Mr. Wilson did not have a stroke, thus they

---

[51] R. Doc. 28.
[52] R. Doc. 25.
[53] *Id.* at pp. 3-4.
[54] R. Doc. 29 at p. 1.
[55] *Id.* at p. 2.
[56] *Id.* at pp. 2-5.
[57] *Id.* at pp. 3-4.
[58] *Id.*

6

constitute permissible rebuttal evidence.[59] Alternatively, GPM asserts that—even if the exhibits constitute new evidence—a court needn't strike them, which GPM deems a drastic remedy.[60] Instead, GPM offers that the Court need only provide the Plaintiff with an opportunity to respond to "new evidence" prior to our ruling.[61] Accordingly, GPM concludes that its exhibits should remain.[62]

Ms. Walker filed a sur-reply which primarily challenged the authorities cited by GPM. In sum, Ms. Walker urges the court to strike the evidence presented by GPM and deny GPM's Motion for Summary Judgment.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[63] If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [t]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[64] The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence."[65] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

---

[59] *Id.* at pp. 4-5.
[60] *Id.* at pp. 5-6
[61] *Id.*
[62] *Id.* at p. 9.
[63] Fed. R. Civ. P. 56(a).
[64] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587(1986) (citations omitted).
[65] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

party, there is no 'genuine issue for trial.'"[66] "In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion."[67]

### III.   ANALYSIS

Under *Erie Railroad Co. v. Tompkins*,[68] a federal court sitting in diversity jurisdiction applies the substantive law of the forum state.[69] The Louisiana statute applicable to the instant case provides:

> B. In any application for life, annuity, or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless either one of the following is true as to the applicant's statement:
>
> (1) The false statement was made with actual intent to deceive.
>
> (2) The false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer under the policy.[70]

"While [La. Rev. Stat. § 22:860(b)] appears to require the insurer to show that the insured's misrepresentation was made with the intent to deceive or that the insured's misrepresentation was material, *Louisiana jurisprudence requires an insurer seeking to invoke this affirmative defense to prove both*."[71] Accordingly, an

---

[66] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.
[67] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).
[68] 304 U.S. 64 (1938).
[69] *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).
[70] La. Rev. Stat. § 22:860(B).
[71] *See Coleman v. Occidental Life Ins. Co. of N. Carolina*, 418 So.2d 645, 646 (La. 1982) (emphasis added).

8

insurer can establish an affirmative defense to coverage by showing that: "(1) the insured made a false statement in his insurance application; (2) the false statement was material; and (3) the insured's false statement was made with an 'intent to deceive' the insurer."[72]

In this context, "[a] misrepresentation is material if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate."[73] Because of the "inherent difficulties of proving intent" behind a misrepresentation, Louisiana courts do not require strict proof of fraud.[74] Instead, intent is determined from circumstances indicating "the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations."[75]

In order for Mr. Wilson's alleged misrepresentations to have voided coverage under the policy, GPM bears the burden of proving that Mr. Wilson misrepresented a material fact with the intent to deceive.[76] Again, GPM alleges the material misrepresentations to have been: (1) Mr. Wilson's weight being listed on the application as 285 pounds, when he was in fact 337 or 338 pounds;[77] (2) his omission of "renal insufficiency";[78] and (3) his omission of his history of stroke.[79]

---

[72] *Smith v. Liberty Life Ins. Co.,* 2012 WL 6162757, at *2 (E.D. La. Dec. 11, 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Bridges*, 36 So.3d 1142, 1146 (La. Ct. App. 2d Cir. 2010)).
[73] *Gwin v. Liberty Mut. Ins. Co.*, 2017 WL 3574443, at *5 (W.D. La. Aug. 17, 2017) (citing *Abshire v. Desmoreaux*, 970 So.2d 1188, 1196 (La. Ct. App. 3d Cir. 1996)).
[74] *Bridges*, 36 So.3d at 1147.
[75] *Id.*
[76] *See Darby v. Safeco Ins. Co. of Am.,* 545 So. 2d 1022, 1025–26 (La.1989). *See also Coleman,* 418 So.2d at 646.
[77] R. Doc. 11-1 at pp. 8-9.
[78] *Id.* at pp. 11-13.

9

Importantly, Ms. Walker does not dispute that the application[80] and questionnaire[81] contain false information and omissions, but instead contends that these discrepancies are due to the fault of GPM or its agent.[82] We will address the alleged misrepresentations in turn.

*A. Mr. Wilson's Weight*

As an initial matter, there is clearly a genuine dispute as to whether Ms. Walker was present during the phone call with Ms. Jirone during which the application was completed. Ms. Walker contends in her affidavit that she "participated with and assisted her husband with supplying application information to Elisa Jirone…"[83] Ms. Jirone's affidavit somewhat contradicts this contention, alleging that "[d]uring the application process…I only spoke with Mr. Wilson to answer the application questions. I did not take any application answers from his wife, Tishauna Walker."[84] Thanks to the advent of the speakerphone, Ms. Jirone's affidavit cannot, and did not, unequivocally assert that Ms. Walker could not have been present during the phone call. Thus, GPM's contention that Ms. Walker was

---

[79] *Id.* at pp. 10-11.
[80] R. Doc. 11-5.
[81] R. Doc. 11-8 at p. 13.
[82] R. Doc. 19 at pp. 2-3.
[83] R. Doc. 19-3 at pp. 1-2.
[84] R. Doc. 23-1 at 3. We deny the Motion to Strike filed to exclude this affidavit. The Court finds that Ms. Jirone's affidavit is directly responsive to, and necessary to rebut, claims made by Ms. Walker in her opposition brief. *See KeyBank Nat. Ass'n v. Perkins Rowe Assocs.*, LLC, No. CIV. A. 09-497-JJB, 2010 WL 1945715 (M.D. La. May 12, 2010). The law of *Vais Arms, Inc. v. Vais,* does not contradict this result. 383 F.3d 287 (5th Cir. 2004). While it is true that arguments and evidence presented for the first time in a reply brief require an opportunity to respond, the Court finds that Ms. Jirone's affidavit, at least on the points relevant here, does not constitute "new evidence" under *Vais Arms. Id.* This result is further supported by the circuit courts who have decided this issue in greater detail. *See Terrell v. Contra Costa Cnty.,* 232 F. App'x 626, 628-29 (9th Cir. 2007); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002); *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). And last, even if it were improper to consider, our consideration of Ms. Jirone's affidavit does not prejudice the non-movant, Ms. Walker.

not there with Mr. Wilson when the call was made, and thus does not have firsthand knowledge of the call, is not so supported by the evidence such that we should not consider Ms. Walker's affidavit.[85]

Ms. Walker contends in her affidavit that Mr. Wilson "never claimed to currently [June, 2020] weigh 285 at the time of the Application."[86] Ms. Jirone's disagrees, declaring that Mr. Wilson informed her "that he was 285 pounds."[87] Bearing on this same issue, the affidavits further disagree the extent to which Mr. Wilson reviewed and signed the completed applications; and whether the completed application comports with the answers that Ms. Walker alleges Mr. Wilson to have given to Ms. Jirone.[88] A dispute confined to dueling affidavits does not beget summary judgment:

> By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations. Instead, a court must disregard all evidence favorable to the moving party that the finder of fact is not required to believe. Although a court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence, a nonmovant's statement may not be rejected merely because it is not supported by the movant's or its representatives' divergent statements.[89]

---

[85] *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.")
[86] R. Doc. 19-3 at p. 3.
[87] R. Doc. 23-1 at p. 3.
[88] R. Doc. 19-3; R. Doc. 23-1.
[89] *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (cleaned up).

Accordingly, we refuse to do so here. While everyone agrees that Mr. Wilson was not 285 pounds, it is unclear who is responsible for that error.[90] Viewing the evidence in the light most favorable to Ms. Walker, the Court finds that there exists a genuine issue of material fact as to whether the alleged misrepresentation regarding Mr. Wilson's weight was even of his doing, let alone whether it was due to some intent to deceive on his part. The Court finds the case cited by Ms. Walker, *Century Sur. Co. v. Nafel,* to be analogous and instructive as to what the Court should do here.[91] That case also involved an insurance policy, with coverage denied by the insurer due to alleged misrepresentations, where the application was completed by the insurer's agent.[92] Similarly, "[b]ecause [GPM] solely relies on [Ms. Jirone]'s affidavit to support the notion that it was [Mr. Wilson] who made misrepresentations on the application, we have a battle of the affidavits, which involves a credibility determination."[93] "There is an issue of fact as to whether it was [Mr. Wilson] or [Ms. Jirone] (by negligence, error, or omission) who made misrepresentations on the application."[94] "This necessar[ily] raises an issue of fact as to the intent element because if it was [Ms. Jirone] who made the misrepresentations, then [Mr. Wilson] cannot have had the requisite intent to deceive."[95] Accordingly, summary judgment is not warranted on these facts.

---

[90] Since Ms. Jirone, at the very least, completed the application herself.
[91] No. CIV. 14-101-JWD-RLB, 2015 WL 5012146 (M.D. La. Aug. 24, 2015).
[92] *Id.*
[93] *Id.* at *11.
[94] *Id.* The Court is given further pause by Ms. Walker's assertion that 285 pounds is only 7 pounds below the threshold by which GPM's build chart would have precluded Mr. Wilson from eligibility for the policy. R. Doc. 20 at p. 8. Mr. Wilson was apparently not privy to this build chart, nor that he would have been denied if he reported his weight to have exceeded 292 pounds. *Id.* The implication being that GPM, or its agent, tailored Mr. Wilson's application to ensure its approval.
[95] *Nafel,* 2015 WL 5012146 at *11.

## B. *Renal Insufficiency (i.e., Kidney Disease)*

The same substantive analysis above applies to the omission of kidney disease from the diabetic questionnaire. It is again wholly unclear whose fault that the omission was. Neither Ms. Jirone, nor Ms. Walker, establish in their respective affidavits why the kidney disease question remained unmarked, aside from their blaming it on the other.[96] But because Ms. Jirone filled out the form on Mr. Wilson's behalf, and because she—as GPM's agent—had "expertise in interpreting the nature of the information sought by the company [s]he represents,"[97] we refuse again to divine an intent to deceive on the part of Mr. Wilson, and find summary judgment inappropriate on the issue.[98]

## C. *Stroke*

Finally, on the issue of the alleged stroke, the Court finds a genuine issue of material fact exists as to whether Mr. Wilson's omission of his alleged history of stroke constitutes an intent to deceive. We start with the deposition of Dr. Brouillette, which is instrumental to this point.[99] Dr. Brouillette testified that he did not witness any signs or symptoms, or proof, that Mr. Wilson had experienced a stroke.[100] However, he did testify, and his records support, that Mr. Walker may have reported a "light stroke" to Dr. Brouillette following a hospital visit in

---

[96] R. Doc. 19-3 at p. 3; R. Doc. 23-1 at p. 2.
[97] *State Farm Mut. Auto. Ins. Co. v. Bridges,* 36 So. 3d 1142, 1147 (La. App. 2nd Cir. 2010).
[98] *See Nafel,* 2015 WL 5012146 at *11; *see also, Shepherd v. Geovera Specialty Ins. Servs., Inc.,* No. CIV.A. 14-862, 2015 WL 1012994, at *4 (E.D. La. Mar. 5, 2015). The other tangential alleged misrepresentations, e.g., diabetic retinopathy, fail to show an intent to deceive for the same reason— Ms. Jirone knew better than Mr. Wilson what the form was asking, and Louisiana courts give greater grace to insureds with regard to omissions made in that scenario.
[99] R. Doc. 19-2.
[100] *Id.* at p. 4.

13

Dallas.[101] Nevertheless, Ms. Walker alleges in her affidavit that "Dr. Brouillette advised her husband and plaintiff that her husband never had a 'stroke' and had no signs or symptoms of a stroke."[102] The medical records from Dallas do not directly dispel Ms. Walker's assertions, and thus, GPM has failed to incontrovertibly establish an intent to deceive.[103] "Although there are some situations in which a Court may infer intent to deceive, in this case there are factual disputes that must be determined by the trier of fact."[104] Accordingly, summary judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, GPM's Motion for Summary Judgment[105] is **DENIED**. Ms. Walker's Motion to Strike[106] is also **DENIED.**

**THUS DONE AND SIGNED** this 17th day of October, 2024.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[101] *Id.* at p. 9.
[102] R. Doc. 19-3 at p. 4.
[103] R. Doc. 28. Quite like Ms. Jirone's affidavit, despite Ms. Walker's moving to strike them, if anything, these records slightly support a finding that Mr. Wilson did not make a misrepresentation with the intent to deceive GPM, hence, their addition does not prejudice Ms. Walker's position. The records add to the vortex of medical terminology that could have been poorly conveyed, misunderstood, or misjudged by Mr. Wilson, Ms. Walker, or Ms. Jirone afterward. Whether it was defined as "ischemia," "infarct," or something else, Ms. Walker contends, under penalty of perjury, that Mr. Wilson never had a stroke, and that this was their understanding from his doctor. Simply put, it appears from the testimony that Mr. Wilson went to a hospital in Dallas, where he experienced a troubling medical episode, and when he returned to his home doctor, that doctor reassured him that he did not have—or at least exhibit signs of having—a stroke. Accordingly, this mix-up is not so improbable to warrant assigning to Mr. Wilson an "intent to deceive" from his potential omission of the history, and summary judgment is thus inappropriate.
[104] *Shepherd*, 2015 WL 1012994, at *4.
[105] R. Doc. 11.
[106] R. Doc. 25.